OPINION of the Court, by
Ch. J. Boyle
On. the 11th of September 1.779, John Patrick and Francis M’Connd entered into articles, by which they agreed *41 that Patrick should obtain 4000 acres of land warrants 5 that M’Connel should locate and cause thorn to lie surveyed and patented ; and that the lands, when thus patented, should be equally divided between them, according to quantity and quality. In pursuance of this agreement, Patrick, on the 15th of the October following, paid into the treasury of Virginia, £. 1600, and obtained; in the name of Francis M’Connel, six land office treasury warrants, amounting to 4000 acres; one of these warrants for 500 acres, was on the 16th of May 1/80, located by Francis M’Connel, on the Kentucky river, including the site of the town of Frankfort.
Francis M’Connel having departed this life, left James M’Connel his heir at law, with whom Humphrey Marshall entered into articles for the purchase of so much of the said 500 acres as should be saved from pri- or claims, together with two other tracts containing 400 acres each, for which Marshall agreed to give at the rate of £. 35 per hundred acres.
Subsequent to this agreement Marshall made an entry in his own name of 400 acres, 260 acres of which he surveyed and patented, including 183 acres of the tract of 300 he had purchased of M’Connel.
For the two tracts of 400 acres each, M’Connel made to Marshall deeds of conveyance with general warranty; but never surveyed the tract of 500 acres, nor made any conveyance thereof to Marshall. The payments made to M’Connel, for which he receipted to Marshall in hislifetime, amount to £, 251 18 9. Marshall also claims as a payment ¿', 133 17 3, which, since the death of M’Connel, he advanced in purchasing 153 acres of Stephens’s military claim, which to that extent covered one of the tracts of 400 acres which M’Connel conveyed to him with general warranty. Since the death of J, M’Connel, and shortly before the commencement of this suit, Marshall caused a survey to be made of the 183 acres included in his patent of 260 acres, and pending this suit another survey of 193 acres was made, leaving the residue of the tract of 500 acres unsurveyed» The, 260 acres for which Marshall had obtained a patent under his own entry and survey, he sold and conveyed to James Wilkinson, who, having procured an act of assembly, establishing the town of Frankfort on it, sold and it to Andrew *42 Holmes, who sold out a great proportion of the lots, op-on which improvements of immense value have been made»
In this situation of things Patrick instituted his suit in chancery, making M’Connel’s heirs, Marshal], Wilkinson and Holmes defendants, and praying for a conveyance of one half ot the 50Ó acres, or an adequate compensation for such parts of it as had been sold and conveved. 'Marshall and M'Connc-l's heirs answered ; as to Wilkinson and Holmes the bill was dismissed, but the dismission was not to be considered as prejudicing the complainant’s claim against the other defendants.
Pending the suit the following agreement between Patrick and Marshall was entered of record : “ The complainant in this cause waives his right to recover in specie so much of the land as is contained within the boundaries of the survey of 260 acres, under which the defendant Marshall sold to Wilkinson, and agrees to accept in lieu thereof the value, provided the court shall think him entitled to recover ; and it is agreed between the complainant and defendant Marshall, that this shall not prejudice the claim to damages in lieu of any land which he might be entitled to recover within the 183 here survey ; and it is agreed that said survey of 183 acres is On part of the said 500 acre entry of Francis M’Connel, which is prior to that of 40Ó acres, under which the said 260 acres have been surveyed, and superior thereto, so far as they interfere ; but if the said Marsh til can avail himself ofuhe legal title to the said 260 acres, without setting up and opposing the same to the survey of 183 acres, he is to be at liberty to do so.”
The court below decreed that Patrick should recover one equal moiety of the 500 acres, to be composed of equal moieties of each of the two surveys made on said entry, and of a moiety of that part of the entry which remained unsurveyed ; but in conformity to the agreement between Patrick and Marshall, instead of the snoietv of the 183 acres, the court decreed that Patrick-should recover of Marshall its value in money ; in the ascertainment of which, the jury who were summoned for that purpose were directed to estimate its value on the 19th of June 1796, the date of the patent, without regarding lasting and valuable improvements.
*43 To this decree Patrick prosecutes this writ of error, and it is agreed between James Hughes, Esq. attorney at law and agent for Patrick, on the one part, and Humphrey Marshall of the other, that Marshall hath and shall have the right to aqsign errors in ⅛⅝ record of said cause as on cross appeal or writ of error, and that the court shall take cognizance and decide accordingly.
The errors assigned on the part of Patrick, relate only to the quantum of damages decreed by the court below, instead of the moiety of the 183 acres. The objections taken by Marshall question the correctness of the decree against him in to to, and more especially so far as it authorises the recovery against him of the one half of the 183 acres.
It is obviously proper that we should first examine Patrick’s right to recover a moiety of the 183 acres, before we investigate the correctness of the mode of estimating its value.
It was contended on the part of Marshall, that the contract between Patrick and p. M’Connel gave t® Patrick no specific lien in equity upon the lands to be located, because at the time there was no subj ect to which such lien could attach; and a right in equity, no more than an estate in fee at law, could he in abeyance.
So far as this argument derives any support from the supposed analogy between a right in equity and an estate in fee at law, it is evidently fallacious. Its fallacy consists in the application of a principle merely technical to a species of right founded on the basis of moral justice.
The maxim of the old common law, that the freehold could not be in suspense or abeyance, was predicated upon the artificial principles of the ancient system of feuds, and grew out of the necessity, which, according to that system, there was of having a tenant always in possession to perform the feudal duties. >But this rule has never even in England been applied to estates created by devise, or to conveyances under the statute of Uses, which were introduced after the rigor of the feudal system had been in some measure abated. Much less ought it to be applied to a right in equity unknown to that system and founded upon principles of moral justice and general utility. But the argument is incorrect in assuming the position that Patrick’s right *44 commenced with the contract with M’Connel; whereas ,n EruA it takes date, not with the contract, but from the purchase of the warrants. By the advancement of' t¡1e money for the warrants, he acquired a right in then» which would follow them into whosoeveFs hands they might come with notice of his claim. This doctrine has been acted upon as well by the courts as the people ⅛⅛. country. In Currens and Coburn vs. Hart, Hard. 37, it was holden that the proprietor of a land warrant which had been fraudulently and without authority assigned, might recover the land upon which it was located, not only while in the hands of the fraudulent assignee, but after it had come to the possession of an innocent purchaser, not having acquired the legal title. The same point was decided in the case of Clay vs. Craig, Renfro, &c. (vol. 1, p. 522.)
The. propne-warrant3 may jurfue it into the naatis o*» Slat’ hí loable tonfide-Taso-- having they6 acquired legal title to the iaacis.
' improvements á»áe under pos. luuuii aitjuitcu mola fid^. noi to fee ⅜⅛⅜⅛⅛:
Admitting, however, Patricks equity in a moiety of the 500 acre entry, it still remains to be inquired how far it is to be preferred or must yield to the right acquired by Marshall, or those claiming under him.
Were Marshall a purchaser with notice of Patrick’s right, he could have tio claim to the protection of a court ol equity, nor would improvements made under a possession acquired mala fide, be respected. But Marshall has in his answer expressly denied notice, and there is no testimony in the cause contravening the answer. An attempt was indeed made in the argument of the cause to infer notice of Patrick’s equity from the saving in the agreement between Marshall and M’Con-nel of prior claims. But it is surely much more rational to attribute this precaution to an apprehension of adverse conflicting entries and surveys, than to a knowledge of a prior equity in the entry which was the subject of the contract. That an apprehension of this sort was entertained, there is abundant reason to believe. The entry in question was surrounded with old military surveys and pre-emptions, and its intrinsic goodness seems to have been doubted by the locator. When causes sufficient to produce the effect, are thus apparent and known, it would be as unjust as unphilosophical to ascribe it to others, merely hypothetical, or suppositious.
Considering Marshall then as a bona fide purchaser, holding however but a mere equitable right, though eminently entitled in that character to the favor of a court of *45 equity, his right, according to the maxim “ qui prior ?'■' tempore, potior estjure,” must yield to that of PatrC But it would ill accord with the indulgence with v, h'> a court of equity looks upon an innocent purchase!. . permit Patrick to encroach farther upon the possesi of Marshall, or those claiming under him, than •, ■ - dispensably necessary to satisfy Patrick’s equin , i * an equal moiety of the 500 acre entry, such a. -t ,⅞ r„ ,⅜ have been had Marshall never purchased, c i v v1 ^ adventitious value been added to it by t|ie true , >, and industry of those claiming under Marshall, Patrick has an undoubted right, ■
But improve^ ments made by innocent pur-chafers of an e* quitante claim without notice of a prior equity ought to be refpeéted, and the proprietor of a warrant ought not to have profit from the adventicias value Accruing from the enter-prize, labor and indnfiry bellow, ed by others innocently oa ths land.,
The chancel* lor will not is*> prive an inno« cent purchafer of a legal advantage, whether rightfully or wrongfully obtained, in favor of a latent equity $ and a prior latent equity under one conflicting entry is outweighed by a junior equity under the fame ciaim united to the legal title under a fubfequent en. try-
*45 But it would be a manifest violation of the clearest principles of moral equity to permit Patrick to appropriate to his use that which is the direct effect of the enterprise and industry of others equally as innocent as nunself. In making a division therefore for the purpose of satisfying Patrick’s claim, the equality of the division ought to be ascertained with reference to the natural, not the improved value of the land. Whether any, and to what extent would be the interference of Patrick’s moiety, when allotted to him according to these principles, with the possession of those claiming under Marshall, cannot be determined with precision from the record in this case. Did Marshall’s defence rest solely upon his equitable right, we should feel ourselves compelled to pronounce only an interlocutory decree, and remand the cause, that the interference might be ascertained by the court below.
But with respect to the 183 acres, Marshall claims protection under the legal title derived from the commonwealth by virtue of his survey of 260 acres. Whether the survey on which the patent for 260 acres issued, was made with or without the consent of M’Con-nel, is immaterial. In either case Marshall can avail himself of the legal title as a shield to protect his equity, when assailed with that of Patrick, A court of chancery will never, in favor of a latent equity, deprive am innocent purchaser of a legal advantage, whether /^rtfully or wrongfully obtained, A purchaser for a valuable consideration, without notice, has been allowed to take advantage of a deed obtained by the most unfair practices — See 2 Ver. 81, 159, and the cases siiere cited. Nor is the consideration that the legal *46 title is derived from an origin distinct from that of* M’Connel’s claim, sufficient to prevent Marshall and his sub-purchasers from availing themselves of its be-, nefit. This case is essentially different from those where it has been adjudged by this court that in a controversy between adverse conflicting claims a plea of purchase without notice is an inadmissible defence. In those cases the party setting up such defence had no pretence of equity in his adversary claim, whose entry must have operated as a notice. But here Marshall sets up an equity in M’Connel’s entry, which furnished bo evidence of any opposing equity. The rule, therefore, “ where equity is equal the law must prevail,” is in its spirit as well as its letter applicable to the present case. ' ⅜
ín. dividing landsj, a part of which have been improved arid enhanced by the iadutlry and 'ehterpnze of one of the tenants in common, the equa« lity of the divi« fion ihould have reference to Quantity and quality, eftiraa-ting theayerag-ed yalue of the whole tract per acre in It%natu* ral and umm~ proved ftate.
*46 Whether Marshall has paid or discharged the whole of the consideration money, so far as he has obtained the legal title, does not appear important in this case to be determined, since prior to notice of Patrick’s equity he had sold and conveyed to Wilkinson, who has sold and conveyed to Holmes. Patrick could recover the land in specie of Holmes only, in whom the legal title is vested. To have entitled himself to a recovery against Holmes, he ought to have shewn that Holmes had notice of his prior equity, before the payment of the consideration money and the investiture of the lega', title. Such a case he has however failed to make out, either by his allegations or his proofs. Under the a~ greement with Patrick, Marshall was liable for the value of the 183 acres only upon condition that Patrick entitled himself to a recovery in specie, which he has failed to do ; and independent of that agreement, as Marshall was guilty of no fraud in the purchase and sale of the land in question, we see no principle upon which he ought to be made accountable for its value. The decree therefore against Marshall for the value of the mo>ety of the 183 acres, is erroneous.
‘‘The 183 acres may be of such superior quality that the residue of the 500 acres, though greater in quantity, may not be equal in value. If exclusive of the -pn3, aeree, there be not sufficient remaining to satisfy Patrick’s claim to an equal moiety of the whole, the deficit must be compensated by M’Connel’s heirs. This compensation wc conceive ought to be made by estica*- *47 ting the deficit according to the average value per acre of the whole tract in its natural and unimproved state at the .time of making the estimate.
Where the de* cree fot the land Itfelf is obftruc* fed by a conveyance to bond fide purchafera without notice* damages fhould be aíTeíTed ac» cording to the value of thé land in its natu ral ftare at the time, of the as» fef. ’ ■
Coñsj howde* creed,.
As to the time of estimating the damages to be decreed instead of a recovery in specie, the rule here adopted is warranted by the case of M'Connel's heirs vs. Dunlap's devisees, Hard. 41.
It is therefore decreed and ordered that the decree of the general court be reversed, annulled and set aside ; that the cause be remanded to said court with direc-txons to cause to be laid off by metes and bounds an equal moiety of the tract of 500 acres (if there be so much exclusive of the 183 acres included in Marshall’s patent of 260 acres) and that said court do decree that M’Connel’s heirs convey the same to Patrick, with warranty from them and their heirs. But if there be not an equal moiety exclusive of the 183 acres, then that said court do decree that the said heirs do convey in like manner so much as there may be exclusive of the said 183 acres, and that the said heirs make compensation for the deficit, to be estimated according to the principles in the aforegoing opinion mentioned. That the bill, as to Marshall, be dismissed, but without cost ; and that M’Connel’s heirs pay to Patrick his costs ; and that the said court do make such other and further decree and order in the premises as may be agreeable to law and equity, and not inconsistent with the aforego-fog opinión. Which is ordered to be certified. And h is further decreed and ordered that Patrick pay to Marshall his costs in this writ of error expended.